IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 3:17-CR-30047-NJR |
| ) | |
| ALFRED L. CROSS, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The UNITED STATES OF AMERICA, by and through its attorneys, Donald S. Boyce, United States Attorney for the Southern District of Illinois, and Scott A. Verseman, Assistant United States Attorney, hereby submits its Response to Defendant's Motion to Dismiss:

**I. PROCEDURAL HISTORY**

On May 27, 2016, the undersigned Assistant United States Attorney ("AUSA") sent a letter to defendant Cross advising him that he was the target of a federal Bank Fraud investigation. *See* Exhibit A. The letter invited defendant to have his attorney contact the undersigned AUSA to discuss a potential pre-indictment plea agreement. *Id.* In the alternative, the letter advised defendant that if he was unable to afford counsel, he could request that the court appoint counsel to represent him. *Id.* Cross chose the second option and submitted a CJA 23 "Financial Affidavit in Support of Request for Counsel." On July 11, 2016, United States Magistrate Judge Donald G. Wilkerson entered an Order appointing the Federal Public Defender or a CJA Panel Attorney to

1

represent defendant.  Exhibit B.  Ultimately, Assistant Federal Defender Thomas Gabel was assigned to represent defendant.

Over the course of the next several months, Mr. Gabel and the undersigned AUSA engaged in plea negotiations.  Eventually, in February 2017, the parties reached a tentative agreement on terms for a pre-indictment plea agreement.  *See* Exhibits C and D.  Under this tentative agreement, defendant would plead guilty to a one-count criminal Information charging him with Bank Fraud.

In the course of setting a date for the plea hearing, Mr. Gabel discovered that defendant was incarcerated in the State of Kentucky.  Exhibit E.  In order to resolve this issue, the undersigned AUSA proposed that he would file the criminal Information and then request a *Writ of Habeas Corpus ad Prosequendum* to have defendant brought to the Southern District of Illinois to resolve this case.  Exhibit F.  Mr. Gabel agreed with this proposal.  *Id.*

The criminal Information, charging defendant with one count of Bank Fraud, was filed on March 14, 2017  R. 1.[1]  Specifically, this Information charged defendant with defrauding seven banks located in the Southern District of Illinois over the time period of April 14, 2011, through March 25, 2015.  *Id.*  On March 23, 2017, this Court set the case for an Initial Appearance/ Arraignment/ Change of Plea Hearing on April 24, 2017.  R. 3.  The next day, the United States moved for a *Writ of Habeas Corpus ad Prosequendum* requesting that defendant be transported to the Southern District of Illinois for the April 24th hearing.  R. 4.  This Court granted the motion and issued the writ on March 29, 2017.  R. 6, 7.

---

[1]    All citations to documents contained in the official court record of this case are denoted "R." and followed by the applicable document number

Defendant appeared before this Court on April 24, 2017. R. 9. At that hearing, defendant waived his right to have the charge prosecuted by indictment. R. 9, 10. Defendant indicated, however, that he did not wish to plead guilty at that time. R. 9. By agreement of the parties, the plea hearing was continued to May 8, 2017. *Id.* This Court then referred the case to Magistrate Judge Williams, who conducted defendant's Initial Appearance and Arraignment on the Information later that same morning. R. 11. The case was set for trial on June 27, 2017. *Id.*

On May 8, 2017, defendant again indicated that he was not ready to enter a guilty plea. By agreement of the parties, this Court continued defendant's plea hearing to May 22, 2017. R. 17.

On May 22, 2017, the defense filed a motion requesting that the Probation Department be ordered to prepare a pre-plea Pre-Sentence Investigation Report ("PSR"). R. 19. The following day, this Court entered an Order granting the defense's request. R. 20. In that Order, the Court noted that the trial remained set for June 26, 2017, but indicated that it would consider a motion to continue the trial date in light of the Order for the pre-plea PSR. *Id.*

Mr. Gabel filed a Motion to Continue Trial on June 6, 2017. R. 23. In his motion, Mr. Gabel noted that the pre-plea PSR had not yet been completed. *Id.* Mr. Gabel then asked that the trial be continued for at least 90 days. *Id.* This Court granted Mr. Gabel's motion on June 8, 2017 and continued the trial to September 26, 2017. R. 25. The Court also excluded the delay caused by this continuance for purposes of the Speedy Trial calculation. *Id.* The Court noted the request was based upon the fact that the pre-plea PSR had not yet been received. *Id.* Considering this fact, the Court found that the ends of justice served by the continuance outweighed the best interests of the public and Defendant in a speedy trial. *Id.*

3

The initial PSR was filed on July 31, 2017. R. 28. On August 3, 2017, defendant submitted a *pro se* letter to the court complaining about various matters, including delays in his case. R. 29. On August 14, 2017, Mr. Gabel filed Objections to the PSR. R. 30. Specifically, Mr. Gabel objected to the loss calculation and the PSR's determination that defendant's criminal history category was VI.[2] *Id.*

This Court conducted a status hearing in this case on August 23, 2017. R. 32. Both defendant and his attorney were present at that hearing. *Id.* During that hearing, the defense requested an opportunity to continue plea negotiations with the Government. *Id.* For purposes of facilitating these plea negotiations, the defense moved that the trial date be continued. *Id.* The United States did not object to the defense's motion to continue. *Id.* This Court then granted the defense's motion to continue and reset the trial date for November 28, 2017. R. 32, 33.

On September 13, 2017, the undersigned AUSA, the FBI case agent, and the FBI Fraud Analyst travelled to the St. Clair County Jail and met with the defendant and Mr. Gabel. Exhibit G. During this meeting, the Government's representatives listened to defendant's positions regarding a plea agreement. The undersigned AUSA also expressed to the defendant the Government's proposed terms for a plea. At the end of the meeting, the undersigned AUSA set a deadline of October 17, 2017, for defendant to enter a guilty plea to the pending information. *See* Exhibit H. The undersigned AUSA explained to defendant that, if defendant did not enter a plea of guilty by that date, the Government would be forced to assume that defendant intended to proceed to trial. In such an event, the Government wished to present the case to the jury on more

---

[2] This criminal history category of VI was significantly higher than the parties had originally calculated in the tentative plea agreement.

4

than just the single pending Bank Fraud count.  Therefore, the Government would seek an indictment to add additional counts of Bank Fraud.  *See* Exhibit H.

Defendant declined to plead guilty before October 17, 2017.  As a result, the United States presented the case to the grand jury on that date and obtained a five count Indictment.  R. 36.  The Indictment mirrored the initial Information, except that defendant's fraudulent conduct against some of the banks was broken out into separate counts.[3]  R. 36.  The Court then set defendant's arraignment on the Indictment for November 3, 2017.  R. 44.

Prior to the arraignment, on October 25, 2017, Mr. Gabel filed a Motion to Continue Trial.  R. 47.  In his motion, Mr. Gabel noted that the case was currently set for trial on November 28, 2017.  *Id.*  Mr. Gabel further represented:  "Defendant needs additional time to prepare for trial on the superseding indictment."  *Id.*  Mr. Gabel also stated "the interests of justice in this matter would appear to be best served by a continuance for *at least 60 days . . . .*"  *Id.* (emphasis added).

The next day, October 26, 2017, this Court granted Mr. Gabel's Motion to Continue.  R. 48.  The Court noted that the defendant had requested more time to prepare for trial in light of the superseding indictment.  *Id.*  Considering this representation, the Court found that the interests of justice served by the continuance clearly outweighed the best interests of the public and defendant in a speedy trial  *Id.*  The Court then continued the trial to January 30, 2018.  *Id.*

---

[3] This document was initially styled as a "Superseding Indictment."  After the Court expressed its view that the document should not be called "Superseding" because the prior charging document was not an indictment, the Government orally moved to strike the word "Superseding" and the Court granted this motion. R. 49.

5

Magistrate Judge Wilkerson conducted defendant's arraignment on the Indictment on November 3, 2017. R. 49. During the arraignment, Judge Wilkerson noted that the case had been set for trial on January 30, 2018. *Id.*

On November 13, 2017, defendant filed a *pro se* "Motion of Ineffective Assistance of Counsel and to Hear Defendant's Pro Se Motions." R. 51. Mr. Gabel responded by filing a "Motion as to Status of Counsel." R. 53. In his motion, Mr. Gabel stated that: "Defendant at this time appears unwilling to listen to the advice of or communicate in a constructive way with undersigned counsel. The resulting breakdown in communication has prevented undersigned counsel from discussing Defendant's case with him in a meaningful way." *Id.*

On November 27, 2017, this Court conducted a hearing on the *pro se* motions filed by defendant and Mr. Gabel's Motion as to Status of Counsel. R. 58. After properly dismissing counsel for the Government from the courtroom, the Court conducted a lengthy hearing, listening to the positions of both defendant and Mr. Gabel. The Court then granted Mr. Gabel's motion to withdraw, appointed a CJA panel attorney to represent defendant, and denied defendant's *pro se* motions as moot. R. 58.

On January 16, 2018, defendant filed a Motion to Dismiss the Indictment based upon an alleged Speedy Trial Act violation. R. 73. In this motion, defendant argues that his trial should have been begun on or before January 12, 2018, which date was 70 days after his arraignment on the Indictment. *Id.* at 2.

## II. DISCUSSION

In his motion, defendant accurately quotes section (c)(1) of the Speedy Trial Act. R. 73 at 2. The relevant portion of that section states:

6

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).  Defendant's argument, however, ignores the fact that his trial *was set* to begin 23 days after his arraignment on the Indictment.  Thus, there has been no violation of the Speedy Trial Act.

At the time the Indictment was returned, defendant had a trial setting of November 28, 2018.  R. 33.  This trial date was still in effect on October 24, 2017, when this Court set defendant's arraignment on the Indictment for November 3, 2017.  R. 44.  Thus, the Defendant had a trial date which was set for 23 days after his arraignment.  This schedule fully complied with § 3161(c)(1)'s 70 day requirement.

Further, all of the parties understood that the charges contained in the Indictment would be tried on the November 28, 2018, trial date.  Counsel for the defense understood this when he filed his Motion to Continue that trial date.  His motion acknowledges that the trial was set for November 28th and asks for additional time to prepare for trial on the superseding indictment.  R. 47.  Nowhere in that motion did defense counsel argue that the November 28th trial date was null and void, nor did he ask the Court to set a trial date within 70 days after the arraignment.  *Id.*  In agreeing not to object to the Motion, counsel for the Government also acknowledged that the November 28th trial date was applicable to the charges contained in the Indictment.  Finally, the Order issued by this Court demonstrates that the Court shared the parties' view on this issue.

But for the motion filed by the defense, defendant would have been tried on the charges in the Indictment 23 days after his arraignment. Defendant's rights under the Speedy Trial Act have not been violated.

The Seventh Circuit has repeatedly rejected Speedy Trial Act claims by defendants who complain about delays they themselves caused. *United States v. Napadow,* 596 F.3d 398, 404 (7th Cir. 2010); *United States v. Larson,* 417 F.3d 741, 746 (7th Cir. 2005); *United States v. Culp,* 7 F.3d 613, 617 (7th Cir. 1993); *United States v. Kucik,* 909 F.2d 206, 210-11 (7th Cir. 1990). In *Kucik,* the Seventh Circuit held: "Where a defendant actively participates in a continuance covering a discrete period of time . . . he cannot then 'sand-bag' the court and the government by counting that time in a speedy trial motion." 909 F.2d at 211.

In *Napadow,* the Court of Appeals restated this proposition in the context of motions to continue filed by the defense: "'[I]t is unfair of [a defendant] to ask that the trial date be delayed to suit her, implicitly agreed to the government's request that time be excluded because of her request, and then try to sandbag the government by insisting that the time be counted against the speedy trial clock.'" 596 F.3d at 404 (*quoting United States v. Baskin-Bey,* 45 F.3d 200, 204 (7th Cir. 1995)). In *Larson,* the Seventh Circuit warned that the Speedy Trial Act was not meant "to permit opportunistic behavior by defendants who request continuances for their benefit and then seek to have the accompanying delay count against the 70-day limit." 417 F.3d at 746.

Defendant Cross argues that this Court was required to set a new trial date for him either at or after his arraignment on the Indictment. R. 73 at 4. Cross then concludes: "Because no finding was made either at Cross' arraignment or at some point thereafter, his trial was required to

8

begin within 70 days." *Id.* Cross does not, however, cite any authority for his premise. In addition, his argument is not supported by the language of the statute.

As quoted above, § 3161(c)(1) states only that a defendant's trial shall commence within 70 days of the filing of the Indictment, or the defendant's first appearance before the court, whichever occurs last. There is no language stating that a court must set the trial date at the arraignment.

In the present case, the Indictment was returned on October 17, 2017, and his arraignment was set for November 3, 2017. If the defense had not moved for a continuance of the trial date, defendant's trial would have commenced on the scheduled November 28, 2017, trial date. Defendant cannot now complain that this Court erred by granting his motion and giving him exactly what he asked for: "a continuance for *at least 60 days* . . . ." R. 47. This is precisely the type of sand-bagging that the Seventh Circuit has held to be impermissible.

The Motion to Dismiss claims: "Cross represents that he did not consent to previous counsel's request for the most recent request for a continuance of his trial. . . ." R. 73 at 5. The Seventh Circuit, however, has expressly rejected this argument. In *United States v. Gearhart,* 576 F.3d 459, 463, n.3 (7th Cir. 2009), the defendant claimed that his Sixth Amendment right to a Speedy Trial had been violated, because his counsel did not obtain his consent before seeking continuances. In denying this claim, the Seventh Circuit stated: "[T]here is no requirement that counsel obtain Gearhart's consent prior to making purely tactical decisions such as the decision to seek a continuance." *Id. See also Ashburn v. Korte,* 761 F.3d 741, 752-53 (7th Cir. 2014)(holding that for purposes of Sixth Amendment Speedy Trial challenges, "because 'the attorney is the [defendant's] agent when acting, or failing to act . . .' delay caused by the defendant's counsel is

9

also charged against the defendant." (*quoting Vermont v. Brillon,* 556 U.S. 81, 90-91, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009)); *United States v. Malone,* 2014 WL 12659446 (N.D. Ind. 2014)("To the extent that Mr. Malone challenges whether or not he consented to the continuances of the detention hearing, the Court notes that counsel need not obtain a defendant's consent prior to making purely tactical decisions, such as the decision to seek a continuance.")

Defendant's trial on the charges contained in the Indictment was set to begin 23 days after the Indictment was returned in this case. The November 28, 2017, trial date was continued to January 30, 2018, on the motion of the defense. Defense counsel was not required to seek defendant's consent before requesting this continuance. Finally, there is no statutory or other authority for defendant's premise that this Court was required to set a new trial date at or after the arraignment. Therefore, defendant's Motion to Dismiss the Indictment should be denied.[4]

---

[4] Citing the factors set forth at 18 U.S.C. § 3162(a)(2), defendant argues not only that the Indictment should be dismissed, but that this dismissal should be with prejudice. R. 73 at 5. As set forth above, there has been no Speedy Trial Act violation and the Indictment should not be dismissed. However, even if the Court were to find that the Indictment should be dismissed, the § 3162(a)(2) factors do not support a dismissal with prejudice. Contrary to defendant's assertion, his offense was a very serious one: he defrauded seven banks out of a total of more than $500,000. Further, the facts and circumstances leading to any dismissal should not be held against the Government: as noted above, the sequence of events of which defendant complains began with a Motion to Continue filed by defense counsel. Finally, re-prosecution would not be contrary to the administration of justice. As noted above, the first two factors weigh heavily against dismissal with prejudice. Further, defendant's complaints about his pre-trial detention do not support a dismissal with prejudice under the third factor. Defendant fails to mention the fact that his pre-trial detention in the current federal case was primarily caused by the fact that he was detained pre-trial in a separate fraud case in the State of Kentucky, and the Court had to bring him back to this district pursuant to a *Writ of Habeas Corpus ad Prosequendum.* Thus, had defendant not been detained in this district, he likely would have been sitting in a jail cell in Kentucky. Further, defendant has not claimed that his ability to present a defense has in any way been hampered by his pre-trial detention.

10

### III. CONCLUSION

For the foregoing reasons, the United States respectfully request that this Court deny defendant's Motion to Dismiss.

                Respectfully submitted,

                DONALD S. BOYCE
                United States Attorney
                Southern District of Illinois

By:    s/ *Scott A. Verseman*
                SCOTT A. VERSEMAN
                Assistant United States Attorney
                9 Executive Drive
                Fairview Heights, IL 62208
                Tel: (618) 628-3700
                Fax: (618) 628-3730
                Email: scott.verseman@usdoj.gov

## **CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing ("ECF"), the foregoing: "United States' Response to Defendant's Motion to Dismiss" was served on January 21, 2018, pursuant to the district court's ECF system, on all ECF filers.

        s/ *Scott A. Verseman*
SCOTT A. VERSEMAN
9 Executive Drive
Fairview Heights, IL 62208
Tel: (618) 628-3700
Fax: (618) 628-3730
Email: scott.verseman@usdoj.gov